**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LIONEL RICHARD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-596** |
| **BP PRODUCTS NORTH AMERICA, INC.,** **ET AL.** | **SECTION "O"** |

## <u>ORDER AND REASONS</u>

Naming seven out-of-state oil companies and one in-state pipe-cleaning contractor as defendants,[1] Lionel Richard filed this lawsuit in state court seeking to recover damages following his kidney cancer diagnosis, which he alleges was caused by decades of pipe-yard workplace exposure to unsafe levels of radiation from naturally occurring radioactive material ("NORM"). Invoking diversity jurisdiction, Defendants Chevron U.S.A., Inc. and Marathon Oil Company removed the lawsuit, urging the Court to disregard the Louisiana citizenship of the sole non-diverse defendant, OFS, Inc., on the ground that Mr. Richard—who shares OFS's Louisiana citizenship—improperly joined the local pipe-cleaner defendant. Before the Court is Mr. Richard's motion[2] to remand his lawsuit to state court for lack of jurisdiction. Defendants oppose[3] remand and filed a sur-reply[4] to Plaintiff's reply.[5] Plaintiff also identified supplemental authority[6] in support of remand.

---

[1] The out-of-state oil company defendants are citizens of Pennsylvania, Texas, Ohio, Maryland, Illinois, Delaware, and New Jersey, while the pipe cleaning contractor, OFS, Inc., shares Mr. Richard's in-state Louisiana citizenship.
[2] ECF No. 29.
[3] ECF No. 35.
[4] ECF No. 47.
[5] ECF No. 43.
[6] ECF No. 48.

Like another section of this Court twice has determined—on nearly identical facts and the same OFS, Inc. affidavit—the removing defendants fail to carry their heavy burden to persuade the Court that OFS, Inc. was improperly joined at the time of removal, so remand is required.

## I.      BACKGROUND

This litigation arises from Plaintiff Lionel Richard's 2023 diagnosis of papillary urothelial carcinoma (kidney cancer), which he alleges was caused by 30 years of workplace exposure to naturally occurring radioactive material ("NORM") present on oilfield pipes sent for cleaning at the pipe yards where he worked.

From 1978 to 2008, Mr. Richard worked at used oilfield pipe yards at Hydril Company in Harvey and Westwego in Jefferson Parish, where he cleaned used oilfield pipe to remove scale, which he alleges was contaminated with NORM.[7] Seeking compensatory and punitive damages for negligence and strict liability, in January 2025, Mr. Richard sued seven oil companies and one pipe cleaning contractor in Louisiana state court in Jefferson Parish.

Mr. Richard is a Louisiana citizen, as is the pipe cleaning contractor, OFS, Inc. The seven oil company defendants—BP Products North America, Inc., Chevron U.S.A., Inc., ConocoPhillips Company, Exxon Mobil Corporation, ExxonMobil Oil Corporation, Marathon Oil Company, and Oxy USA, Inc.—are out-of-state citizens of seven different states: Pennsylvania, Texas, Ohio, Maryland, Illinois, Delaware, and

---

[7] ECF No. 1-1.

New Jersey.[8] Because the instant motion to remand turns on whether the in-state pipe-cleaning contractor, OFS, Inc., was improperly joined, the Court focuses on Mr. Richard's allegations against this non-diverse defendant. However, first, a broad overview of Mr. Richard's allegations is necessary to contextualize his claims against OFS.

As part of oil and gas (hydrocarbon) extraction operations, "pipe [is put] down into the earth to the depths at which hydrocarbon reservoirs are located."[9] During "hydrocarbon production operations, the downhole production pipe, *i.e.,* 'used pipe', would become contaminated with mineral scale which contained hazardous, toxic and carcinogenic radioactive materials . . . generally referred to . . . as NORM[.]"[10] As Mr. Richard explains in his complaint, "[d]uring production, NORM scale adheres to the internal diameter and external surface of the used pipe[, which accordingly] became contaminated with NORM scale."[11] Accumulation of this NORM scale inside the used pipe "restrict[s or obstructs] the hydrocarbon flow up through the pipe, which" hinders production from the well, resulting in revenue loss to the oil companies which own the respective well.[12] To address this and resume production, used pipes with

---

[8] ECF No. 1. Specifically, the Notice of Removal alleges that BP Products North America, Inc. is a citizen of Maryland (place of incorporation) and Illinois (principal place of business); Chevron U.S.A. Inc. is a citizen of Pennsylvania (place of incorporation) and Texas (principal place of business); ConocoPhillips Company is a citizen of Delaware (place of incorporation) and Texas (principal place of business); Exxon Mobil Corporation is a citizen of New Jersey (place of incorporation) and Texas (principal place of business); ExxonMobil Oil Corporation is a citizen of New Jersey (place of incorporation) and Texas (principal place of business); Marathon Oil Company is a citizen of Ohio (place of incorporation) and Texas (principal place of business); Oxy USA Inc. is a citizen of Delaware (place of incorporation) and Texas (principal place of business).

[9] ECF No. 1-1 ¶ 8.

[10] *Id.* ¶ 11.

[11] *Id.* ¶¶ 12-13.

[12] *Id.* ¶¶ 14-15.

significant scale buildup must be removed and replaced. When this happened, the oil company "pull[ed] the used pipe from the well and replace[d] the used pipe with new pipe or re-conditioned used pipe" in order to resume hydrocarbon production.[13] Once the oil companies remove the used pipe from the well, the used pipes were sent "to be cleaned at the Hydril Yard to remove the NORM contaminated scale and to have the pipe inspected to determine if the pipe could be [reconditioned for] use[] downhole in a well again."[14]

It is alleged that the oil company defendants sent their used pipe to be cleaned at Hydril yard (among others) and that OFS, Inc., a pipe cleaning contractor, "conducted pipe cleaning and inspection operations to determine if the pipe" could be cleaned and inspected for fitness for use again.[15] Mr. Richard alleges that, while working at the Hydril yard, he cleaned used oilfield pipe to remove scale, which was contaminated with NORM.[16] Cleaning used oilfield pipe "created aerosolized radioactive dust which spread through the air and contaminated the Hydril yard."[17] Mr. Richard's presence at and job duties for Hydril "caused him to be heavily exposed to airborne dust which he inhaled and ingested and which was contaminated with highly radioactive mineral scale[.]"[18] Further, Mr. Richard alleges that "[t]he injurious dose suffered by Plaintiff resulted from radiation emanating from the scale

---

[13] *Id.* ¶ 16.
[14] *Id.* ¶ 19.
[15] *Id.* ¶¶ 19-20, 24.
[16] ECF No. 1-1.
[17] *Id.* ¶ 6.
[18] *Id.* ¶ 7.

which accumulated upon the ground and in the air and from the inhalation and ingestion of the aerosolized dust."[19]

It is alleged that during the relevant timeframe, the oil company defendants "had actual knowledge of the presence and dangerous levels of radiation in the NORM scale" and that they concealed the occupational hazard and failed to warn and/or to take preventive measures.[20] It is further alleged that OFS, too, "had specific knowledge of the health dangers of NORM while it was conducting operations at . . . Hydril yards" in 2002 or before, and that it failed to: conduct safe pipe-cleaning operations, contain or dispose of NORM, clean up yard contamination, properly test the used pipe or monitor for radiation discharge from its cleaning operations, or warn Plaintiff or his employer.[21] Indeed, Mr. Richard alleges that one way OFS manifested its specific knowledge of the dangers of NORM at the Hydril yards was in May 2002 when various officers, directors, owners, and employees of OFS—including OFS's President, Douglas M. Lanasa, Jr.—sued the oil company defendants for damages arising from their exposure to NORM.[22] In spite of OFS's NORM hazard knowledge, Mr. Richard alleges, it failed to conduct safe pipe-cleaning and inspection work at the Hydril yards and its "fault was a substantial contributing factor in causing Plaintiff's cancer."[23]

---

[19] *Id.* ¶ 29.
[20] *Id.* ¶¶ 27, 30-146.
[21] *Id.* ¶¶ 149-50.
[22] *Id.* ¶¶ 151-58.
[23] *Id.* ¶ 159.

After being served with Mr. Richard's state-court lawsuit, two oil company defendants—Marathon Oil Company and Chevron U.S.A., Inc.—timely removed Mr. Richard's lawsuit to this Court on March 27, 2025.[24] In invoking the Court's diversity jurisdiction, they urge the Court to ignore the Louisiana citizenship of OFS, Inc. on the theory that Mr. Richard improperly joined this pipe-cleaning contractor defendant such that OFS's non-diverse citizenship should be disregarded. But as another section of Court twice has determined, the removing defendants fail to carry their burden to show OFS was improperly joined. Because complete diversity is lacking, remand is required.[25]

## II.    LAW AND ANALYSIS

### A.  Legal Standards

#### 1.  The Removal and Diversity Statutes

"Federal courts are courts of limited jurisdiction and generally can resolve only the cases that Congress grants them power to hear." *Hain Celestial Group, Inc. v. Palmquist*, 607 U.S. ---, 146 S. Ct. 724, 728 (2026). When a case initiated in state court could have been brought originally in federal court, removal is authorized by statute. *See* 28 U.S.C. § 1441(a). The removing defendants "bear[] the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citations omitted). "The removal statute is strictly construed, with doubts 'resolved in favor of remand.'"

---

[24] ECF No. 1.
[25] The removing defendants filed a motion to dismiss the strict liability claims. ECF No. 19. However, the Court lacks jurisdiction to reach the merits of Plaintiff's claims considering the presence of non-diverse OFS.

*Pace v. Cirrus Design Corp.*, 93 F.4th 879, 888–89 (5th Cir. 2024) (quoting *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008)).

Here, the Congressional grant for original jurisdiction is the diversity statute. *See* 28 U.S.C. § 1332(a)(1). A case may be removed based on § 1332 if there is complete diversity of citizenship and the amount in controversy exceeds $75,000.[26] *See id.*; *see also Flagg v. Stryker Corp.*, 819 F.3d 132, 135 (5th Cir. 2016) (en banc) (citing 28 U.S.C. § 1332(a)(1)). "Relatedly, a district court is prohibited by statute from exercising jurisdiction over a suit in which any party, by assignment or otherwise, has been ***improperly*** or ***collusively*** joined to manufacture federal diversity jurisdiction." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc) (emphasis in original) (citing 28 U.S.C. § 1359).

Because this case was removed based solely on diversity jurisdiction, removal is subject to 28 U.S.C. § 1441(b)(2), "otherwise known as the 'forum-defendant rule.'" *In re Levy*, 52 F.4th 244, 246 (5th Cir. 2022). Under Section 1441(b)(2)'s forum-defendant rule, a case "removable solely on the basis" of diversity jurisdiction, like this one, "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Accordingly, to support removal and to avoid remand here, the removing Defendants must show that "there is complete diversity between all named parties, 'and no defendant is a citizen of the forum State,'" Louisiana. *Pace*, 93 F.4th at at 889 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005)).

---

[26] It is undisputed that the amount-in-controversy requirement for diversity jurisdiction is met because Mr. Richard seeks over $75,000, exclusive of interest and costs.

### 2. The Improper Joinder Doctrine

The removing defendants here invoke "[t]he improper joinder doctrine[, which] constitutes a narrow exception to the rule of complete diversity." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005). That is, a defendant is "entitle[d] to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood*, 385 F.3d at 573; *see also* 14 Charles Alan Wright et al., Federal Practice and Procedure § 3641 (3d ed. Sept. 2025 update) ("[T]he Federal courts should not sanction devices intended to prevent the removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." (quotation omitted)). Complete diversity thus depends on whether the nondiverse defendant, OFS, Inc., was improperly joined. If it was, the Court can "disregard" its Louisiana citizenship in the jurisdictional analysis such that complete diversity would exist. *See Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 812 (5th Cir. 2021) (citing *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (en banc)). If it was not, OFS's in-state citizenship destroys complete diversity and the case must be remanded.

"When analyzing whether the proponent of jurisdiction has established improper joinder," the Court "examine[s] all factual allegations and ambiguities of state law in the light most favorable to the party resisting jurisdiction." *Williams*, 18 F.4th at 811 (citation omitted). Critically, "to determine whether a plaintiff has improperly joined a non-diverse defendant, the district court must examine the

plaintiff's possibility of recovery against that defendant *at the time of removal.*" *Flagg*, 819 F.3d at 137 (emphasis in original). The party claiming improper joinder bears a "heavy burden" of persuasion. *See Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citation omitted); *see also Palmquist v. Hain Celestial Grp., Inc.*, 103 F.4th 294, 304 (5th Cir. 2024) (citation omitted), *aff'd on other grounds*, 607 U.S. ---, 146 S. Ct. 724 (2026). "'[A]ny contested issues of facts and any ambiguities of state law must be resolved' in favor of remand." *Palmquist*, 103 F.4th at 304 (citations omitted).

There are "two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Smallwood*, 385 F.3d at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)).[27] The removing defendants do not attempt to show actual fraud, so only the second way is at issue here.

Under the second way, the test is whether Mr. Richard "had any possibility of recovery" against local OFS, Inc. in Louisiana state court. *Williams*, 18 F.4th at 812 (citing *Flagg*, 819 F.3d at 136). Courts in their discretion approach this determination by employing one of two means. First and ordinarily, the Court considers whether the complaint's allegations can survive a Rule 12(b)(6) challenge. The no-possibility-of-recovery test "is virtually identical to the inquiry on a motion to dismiss for failure to state a claim: '[ ] if a plaintiff can survive a Rule 12(b)(6) challenge, there is no

---

[27] The Fifth Circuit has "occasionally referred to improper joinder as 'fraudulent joinder.'" *Williams*, 18 F.4th at 812 (quoting *Smallwood*, 385 F.3d at 571 n.1). "Although there is no substantive difference between the two terms, 'improper joinder' is preferred" because it is "more consistent with the statutory language." *Smallwood*, 385 F.3d at 571 n.1.

9

improper joinder.'" *Williams*, 18 F.4th at 812 (quoting *Flagg*, 819 F.3d at 136) (citation omitted); *see also Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018) (observing that "the existence of even a single valid cause of action against in-state defendants . . . requires remand of the entire case to state court" (citations omitted)).[28] Conversely, if a plaintiff "has not stated a claim for relief against" the nondiverse defendant under Rule 12(b)(6), "then [those defendants] were improperly joined[,] and [the Court] may disregard their citizenship." *Allen*, 907 F.3d at 183 (citation omitted).

Second, if the complaint's allegations satisfy Rule 12(b)(6) but the plaintiff otherwise "has misstated or omitted discrete facts that would undermine the propriety of joinder[,]" the Court may go beyond the pleadings to "conduct a summary inquiry" to determine whether undisputed facts preclude recovery against the local defendant. *See Smallwood*, 385 F.3d at 573; *see also Flagg*, 819 F.3d at 136–37 (observing that a district court may "pierce the pleadings and conduct a summary inquiry" but "only to identify the presence of discrete and undisputed facts that would preclude the plaintiff's recovery against the in-state defendant" (quotations, citations, and alterations omitted)). Even if the Court in its discretion pierces the pleadings in the limited fashion authorized, however, the test for improper joinder remains "whether the defendant has demonstrated that there is no possibility of recovery by

---

[28] The Court evaluates the removed state-court petition under the federal pleading standard. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.,* 818 F.3d 193, 207–08 (5th Cir. 2016). That means the petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

the plaintiff against an in-state defendant." *See Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 765 (5th Cir. 2016) (citing *Smallwood*, 385 F.3d at 573). The Fifth Circuit offers classic "examples of improper joinder" evident after—and underscoring the limited nature of—a summary inquiry, *i.e.,* evidence "preclude[s] the possibility of recovery" when it shows "the in-state doctor defendant did not treat the plaintiff patient"; "the in-state pharmacist defendant did not fill a prescription for the plaintiff patient"; or "a party's residence was not as alleged[.]" *Id.* at 766 (citing *Smallwood*, 385 F.3d at 573-74 & n.12).

In short, where a summary inquiry dispatches evidence of "discrete and undisputed facts" showing that a plaintiff has no possibility of recovery against the in-state defendant, the improper joinder standard has been met. *See id.* Applying these standards, the removing Defendants fail to carry their "heavy burden" to show that Mr. Richard fails to state a reasonable possibility of recovery against OFS, Inc. Because there is no improper joinder, OFS, Inc.'s shared citizenship with Mr. Richard destroys complete diversity and requires remand.

### B. The Removing Defendants Fail to Carry their Heavy Burden to Show that Non-Diverse OFS, Inc. Was Improperly Joined.

#### 1. The Parties' Contentions Frame the Improper Joinder Issue.

In invoking the Court's diversity jurisdiction, the removing defendants urge the Court to ignore the Louisiana citizenship of OFS, Inc. on the theory that Mr. Richard improperly joined this pipe-cleaning contractor defendant. Conceding that Mr. Richard states a viable claim against OFS, the removing defendants instead urge the Court to pierce the pleadings to determine that OFS is "a defunct entity" that

could not fund a judgment and thus Mr. Richard has no reasonable possibility of recovery against the non-diverse defendant. The removing defendants support their "defunct entity" theory with Douglas M. LaNasa, Jr.'s affidavit, which was signed just three days prior to and included with their notice of removal.[29] Mr. LaNasa, the President and sole officer of OFS, Inc., attested that "[t]he Articles of Incorporation and franchise of OFS, Inc. will be terminated effective April 9, 2025, pursuant to the March 10, 2025 letter from the Louisiana Secretary of State to OFS, Inc." Mr. LaNasa further attested that OFS, Inc.: (i) does not own or lease office space (and has not done so in more than three years); (ii) owns no property or assets (and has not owned any for more than three years); (iii) has no customers or accounts receivable (and has not engaged in business activity in more than three years); (iv) has no money; and (v) has no employees (and has had no "working employee" for over two years, at which time the employee assisted in winding down the company).[30]

Mr. Richard moves to remand his lawsuit back to state court because it is undisputed that he has alleged a viable claim against OFS.[31] He contends that the removing defendants wrongly anchor their improper joinder theory to whether the non-diverse party has assets with which to pay a judgment rather than whether he has stated a valid claim for liability against OFS upon which relief may be granted.[32] Furthermore, Mr. Richard challenges the only evidence the removing defendants offer in support of their improper joinder theory by submitting evidence and

---

[29] ECF No. 1-7.
[30] *Id.*
[31] ECF No. 29-1.
[32] *Id.*

argument to refute and/or establish factual disputes regarding the extent to which OFS may be "defunct." Specifically, Plaintiff counters with documents from Louisiana and Texas Secretaries of State, a 2025 parcel listing from Plaquemines Parish, and correspondence with OFS's registered agent and attorney, who indicated he would enroll as counsel for LaNasa and OFS on "new norm cases[.]"[33] In a notice of supplemental authority, Mr. Richard points out that another section of Court has rejected the removing defendant's improper joinder theory in connection with the same non-diverse defendant, OFS, in another NORM-exposure case removed in reliance on the same affidavit by OFS's president.[34]

The removing defendants offer no rebuttal to Plaintiff's identification of these supplemental authorities. Rather, in opposing Mr. Richard's motion to remand, the removing defendants continue to press Mr. LaNasa's affidavit and their argument that district courts in the Western District of Louisiana have applied a factor-based test assessing a non-diverse business entity's activities, which they submit supports their improper joinder theory that the dispositive consideration is whether the plaintiff has any reasonable possibility of recovery from an entity which has essentially been defunct for many years. That Plaintiff has stated a valid claim is irrelevant, defendants argue, because Plaintiff has no possibility of recovering a money judgment against a "defunct" corporation.

---

[33] ECF Nos. 29-2 through 11 and ECF No. 43.
[34] ECF No. 48.

**2. Defendants Removing NORM Cases to this Court Have Failed to Show that OFS Was Improperly Joined.**

As a threshold matter, the Court observes that it is not resolving the issue of OFS's alleged improper joinder issue on a clean slate. This Court is no stranger to NORM-exposure litigation removed from state court. OFS, Inc. has been named as a defendant in NORM cases, whether mass or class actions or those involving individual plaintiffs.[35]

Indeed, the instant case is one of five total NORM-exposure cases naming OFS as a defendant that was removed to this Court within the past three years. The other four have been remanded due to the removing oil company defendants' failure to carry their burden to show that OFS was improperly joined. Two other sections of this Court rejected arguments advanced by removing oil company defendants that plaintiffs had no possibility of recovery against OFS after considering dueling affidavits on the issue of whether OFS, in fact, had cleaned used pipe after certain time periods at certain pipe yards. *See* Civil Action No. 24-2122, *Ledet, et al. v. BP Products North America, Inc., et al.* (ECF No. 37) (Barbier, J.); *see also Cline v. BP Prods. North America, Inc.*, No. 23-856, 2023 WL 4558876 (E.D. La. July 17, 2023) (Guidry, J.).

And the other two rejected the identical arguments advanced by the removing defendants here. That is, directly pertinent to the improper-joinder theory presented

---

[35] *See, e.g., Coleman v. H.C. Price Co.*, No. 11-2937, 2014 WL 354443 (E.D. La. Sept. 2, 2014) (Morgan, J.) (of 32 motions to dismiss presented, converting OFS's motion to dismiss NORM-exposure claims as to some plaintiff groups into one for summary judgment and granting the motion on consideration of OFS's affidavit attesting that it did not clean pipe at certain facilities).

in the instant NORM-exposure case, Judge Barbier twice has granted a plaintiff's motion to remand NORM-exposure cases, rejecting the same removing oil company defendants' argument that the plaintiff had no possibility of recovery against "defunct" entity OFS. *See Ledet v. BP Products North America, Inc.*, No. 25-793, 2025 WL 1668509 (E.D. La. June 13, 2025) (*Ledet II*);[36] *Alegria v. BP Prods. North America, Inc.*, No. 25-790, 2025 WL 1668505 (E.D. La. June 13, 2025). Judge Barbier's determinations squarely persuade, compelling the same outcome—remand—under identical circumstances here.[37]

### 3. Conflicting Evidence Regarding OFS's Corporate Status Defeats Defendants' Attempt to Show Improper Joinder.

The Court confronts the same issue presented to Judge Barbier and resolved against the removing defendants: whether non-diverse OFS was improperly joined to defeat diversity jurisdiction. To resolve it, the Court pierces the pleadings to consider whether OFS was "defunct" at the time of removal.[38] To put a finer point on it, the issue presented is whether the removing defendants have demonstrated that a plaintiff who has alleged a valid claim against a non-diverse corporation nevertheless is precluded from any reasonable possibility of recovery where the corporation's current president attests that it has no employees, assets, or money, but where the corporation has *not* been formally dissolved in accordance with state law, remains "active", owns property, and is participating through counsel in similar cases at the

---

[36] *Ledet* was twice removed and twice remanded.

[37] The removing defendants in the instant case do not affirmatively resist the outcome of *Ledet II* and *Alegria*, which were remanded after briefing was complete on the instant motion to remand.

[38] The removing defendants do not suggest that "defunct" is a term of art but, rather, imply that "defunct" equates to an inability to fund a judgment.

time of removal?[39] To articulate this issue underscores the fact disputes that doom the removing defendants' ability to carry their heavy burden to identify *discrete and undisputed* facts that preclude Mr. Richard's recovery against OFS. Because the narrow summary inquiry invited by the removing defendants renders OFS's "defunct" status debatable at best, they fail to show that OFS was improperly joined and OFS's non-diverse presence thus defeats complete diversity, requiring remand.

In *Ledet II* and *Alegria*, the same removing defendants relied on the same March 24, 2025 LaNasa Affidavit to support the same arguments advanced in the instant case and summarized herein. In each case, Judge Barbier conducted a narrow summary inquiry to determine what proved dispositive in rejecting the defendants' improper joinder theory: whether "the presence of discrete and undisputed facts . . . would preclude plaintiff's recovery against the in-state defendant." *Ledet II*, 2025 WL 1668508, at *3 and *Alegria*, 2025 WL 1668505, at *3 (both quoting *Smallwood*, 385 F.3d at 573). Judge Barbier found no such discrete and undisputed facts.[40] LaNasa's affidavit itself failed to show that OFS undertook to comply with state law to pursue dissolution and was silent as to insurance policies for the relevant time period. *See*

---

[39] Articulating the issue thusly pretermits the more abstract issue of whether a plaintiff has no reasonable possibility of recovering against a corporate defendant within the meaning of the Fifth Circuit's formulation of the improper joinder doctrine when the corporation has complied with the statutory prerequisites for dissolution, has ceased to exist under the applicable law, or is indisputably insolvent. Because no such undisputed facts are presented here to inform this more abstract formulation of Defendant's "defunct corporation" theory of improper joinder, the Court declines to address it.

[40] Though Judge Barbier considered the Western District cases invoked by the removing defendants, employing that court's factor-based circumstantial assessments of whether a non-diverse company is "defunct" was found unhelpful in the case of OFS, which enjoyed a merely debatable corporate status as opposed to those "defunct" entities identified in the Western District cases where corporate inactivity had endured for one or more *decades*. *See, e.g., Alegria*, 2025 WL 1668505, at *2 (citations omitted).

*Ledet II*, 2025 WL 1668508, at \*4 and *Alegria*, 2025 WL 1668505, at \*4. Moreover, the impact of Mr. LaNasa's stray assertions purporting to support an inference that OFS was "defunct" were further diluted when considered alongside other realities, including that OFS had not been formally dissolved, any post-removal administratively-terminated status was of relatively recent vintage, and the plaintiff's own countervailing evidence, including assessor's office records showing OFS owned property and an email from OFS's alleged counsel indicating participation in other litigation against OFS and LaNasa. *See generally id.*

Ultimately, Judge Barbier determined that the removing defendants invited a mere "circumstantial inquiry" into OFS's inactive—but not formally dissolved—status that "would not provide undisputed facts to prove improper joinder" but, instead, implicated "disputed facts" which precluded a determination that OFS is a defunct corporation against which plaintiff has no possible means of recovery. *See Ledet II*, 2025 WL 1668508, at \*4 and *Alegria*, 2025 WL 1668505, at \*4.

So too here. Piercing the pleadings to conduct a summary inquiry reveals disputed facts concerning OFS's corporate status. Just like Judge Barbier determined, LaNasa's assertions in his affidavit hardly present undisputed facts that prove improper joinder of OFS. And Plaintiff presents countervailing evidence probative of a contrary inference, that OFS is not "defunct."

Because the facts pertaining to OFS's status are disputed, the removing defendants fail to carry their heavy burden to show that Mr. Richard is precluded from recovering against non-diverse OFS based on this status. The identical affidavit

17

on which removing defendants predicate their "defunct" entity theory of improper joinder was considered by Judge Barbier in *Ledet II* and *Alegria*.[41] There, as here, OFS's President Douglas LaNasa attests that OFS has not engaged in business activity for three years, has no assets or employees, has been "winding down the company," and would have its charter terminated on April 9, 2025. There, as here, the plaintiff contests whether and the extent to which OFS may be "defunct" by offering his own countervailing evidence.[42] Accordingly, there as here, "a[n identical] circumstantial inquiry [does] not provide undisputed facts to prove improper joinder." *See Ledet II*, 2025 WL 1668508, at *4 and *Alegria*, 2025 WL 1668505, at *4. Rather, it is undisputed that OFS was *not* formally dissolved in accordance with state law[43] and certain attestations by LaNasa that may be probative of whether OFS is "defunct"[44] are contested by Plaintiff, who provides evidence dispelling an inference

---

[41] *Compare* No. 25-790 ECF No. 1-2 and No. 25-793 ECF No. 2-2 *with* No. 25-596 ECF No. 1-7 (all bearing the caption *Richard v. BP Products North America, Inc., et al.*).

[42] Plaintiff does not rest on mere argument to contest Mr. LaNasa's assertions and the removing defendants' proffered inference that OFS was a defunct entity. Plaintiff offers evidence of his own that is probative of OFS's corporate status. Plaintiff counters the LaNasa Affidavit by submitting that, at the time he filed his lawsuit and at the time of removal, OFS had not been dissolved and was still an active corporation as evidenced by the following: none of the statutorily required steps for dissolution of OFS had been undertaken; OFS is a defendant in four ongoing NORM personal injury lawsuits handled by Mr. Richard's attorneys and had even filed answers within a year of removal of the instant case; according to the Louisiana Secretary of State, OFS was "active" but not in good standing; according to the Texas Secretary of State, OFS was still "in existence" as recently as April 24, 2025; a Louisiana parish assessor's 2025 parcel listing indicates that OFS, Inc. owns property with a market value of $8,660 and assessed at $1,299; and an attorney for LaNasa and OFS recently emailed Plaintiff's counsel stating that he would enroll to represent them in "several new [NORM] cases." *See, e.g.,* ECF Nos. 29 and 43.

[43] The removing defendants offer no support for their contention that the Court may simply gloss over applicable state substantive law respecting corporate formalities to conclude that a non-diverse corporation's status—while short of dissolution—is "defunct."

[44] The removing defendants' reliance on then prospective fact that OFS's articles of incorporation would be "administratively terminated" on April 9, 2025 is of no moment to the improper joinder analysis here for at least two reasons. First, as a matter of federal removal procedure, whether this Court has diversity jurisdiction is determined at the time of removal, which occurred before the anticipated date of administrative termination of OFS. Second, as a matter of Louisiana corporate

18

that OFS was "defunct" at the relevant time. In short, no facts were presented which preclude Plaintiff's recovery against OFS.

*   *   *

That the removing defendants and Mr. Richard spar on the facts predicating the defendants' "defunct corporation" theory of improper joinder defeats such theory. To be sure, *Smallwood* instructs that an improper-joinder proponent's resort to a summary inquiry will succeed only when the inquiry yields answers to discrete and material questions—or "fact[s] that easily can be disproved if not true"—such as, in the prototypical examples mentioned in *Smallwood*, facts showing that: the in-state doctor defendant did not treat the plaintiff patient; the in-state pharmacist defendant did not fill a prescription for the plaintiff patient; or, a party's residence was not as alleged. *See* 385 F.3d at 573-74 n.12 (citation omitted). The defendants have not offered facts that easily disprove any fact alleged by Plaintiff concerning OFS's liability for his NORM exposure. Finally, far from rendering it undisputed that OFS is a defunct corporation, the fact disputes and ambiguities surrounding OFS's corporate status favor Plaintiff, the party resisting jurisdiction, because factual disputes and ambiguities are doubts resolved in favor of remand. *See Wilson v. Kemper Corp. Servs., Inc.*, 134 F.4th 339, 347 (5th Cir. 2025) (observing that "as the effect of removal is to deprive the state court of an action properly before it, removal

---

statutory law, administrative termination, *see* La.R.S. 12:1-1442(b)(2), does not extinguish claims against the corporation or abate proceedings to which the corporation is a party. *See* La. R.S. 12:1-1443(C)(1); *see also* La.R.S. 12:1-1443(C)(3). So, regardless of whether OFS's articles of incorporation ultimately were administratively terminated post-removal, the termination ostensibly has no legal effect on the ability of Plaintiff to state a claim for relief against OFS.

19

raises significant federalism concerns. The removal statute is therefore to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand" (citations omitted)).

## III.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the motion[45] to remand is **GRANTED**. The case shall be remanded to the 24th Judicial District Court for the Parish of Jefferson.

New Orleans, Louisiana, this 27th day of March, 2026.

BRANDON S. LONG<br>UNITED STATES DISTRICT JUDGE

---

[45] ECF No. 29.